UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**     The Court DENIES Defendant's motion for summary judgment

     Before the Court is Defendant WIN.IT America, Inc.'s ("Defendant" or "WIN.IT") motion for summary judgment. *See* Dkt. # 28 ("*Mot.*"). Plaintiffs BMW of North America, LLC and Bayerische Motoren Werke, AG ("Plaintiffs") oppose the motion, *see* Dkt. # 37 ("*Opp.*"), and Defendant replied, *see* Dkt. # 49 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **DENIES** Defendant's motion for summary judgment.

I.    Background

     Plaintiffs design and manufacture various items, from motor vehicles and automotive accessories to lighters, key chains, and USB flash memory drives, branded with BMW marks for which they own "numerous federal trademark registrations." *See First Amended Complaint*, Dkt. # 17 ("*FAC*"), ¶¶ 15, 19. Plaintiffs' products have earned "a reputation for innovation, quality and performance," through which Plaintiffs "have built up and developed significant goodwill." *Id.* ¶¶ 16–17.

     Defendant is a fulfillment company with locations in California and Kentucky. *Defendant's Statement of Undisputed Facts*, Dkt. # 49-1 ("*SUF*"), ¶ 1. It is a wholly owned subsidiary of WIN.IT (Hong Kong) Trading Ltd., which is a subsidiary of WIN.IT (Shanghai) Information Technology Co. *Id.* Defendant provides warehousing, order fulfilment, and distribution services to sellers of e-commerce products in China who are customers of Defendant's parent companies. *Id.* ¶¶ 2–3. Ninety to ninety-five percent of Defendant's customers are from China. *Id.* ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

Plaintiffs allege that Defendant imports, warehouses, sells, and distributes counterfeit goods bearing the BMW marks ("Counterfeit Goods"). *FAC* ¶ 24. To demonstrate, Plaintiffs attached to their complaint receipts from fourteen transactions in which they purchased the Counterfeit Goods from various sellers on eBay ("the Third-Party Sellers"). *FAC*, Exs. A–N. Plaintiffs dispatched five cease and desist notices to Defendant, but they allege that Defendant continues to import, warehouse, and distribute the Counterfeit Goods. *Id.* ¶ 71.

Plaintiffs assert the following six causes of action:

First Cause of Action: Trademark infringement, 15 U.S.C. § 1114. *Id.* ¶¶ 74–84.

Second Cause of Action: False designation of origin & unfair competition, 15 U.S.C. § 1125(a). *Id.* ¶¶ 85–94.

Third Cause of Action: Trademark dilution, 15 U.S.C. § 1125(c). *Id.* ¶¶ 95–100.

Fourth Cause of Action: Unlawful, unfair, or fraudulent business practices, Cal. Bus. & Prof. Code §§ 17200 et seq. *Id.* ¶¶ 101–09.

Fifth Cause of Action: Contributory trademark infringement. *Id.* ¶¶ 110–20.

Sixth Cause of Action: Vicarious trademark infringement. *Id.* ¶¶ 121–127.

Defendant now moves for summary judgment on all claims. *See generally Mot.*

II.   Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 630–31. The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III. Judicial Notice and Evidentiary Rulings

Plaintiffs have submitted a request for judicial notice of two documents: a trademark registration certificate and a court order from the Eastern District of Pennsylvania. *Request for Judicial Notice*, Dkt. # 43. While the Court recognizes that they are likely proper subjects for judicial notice, it does not find them necessary for deciding this motion and therefore does not rely on them.

Plaintiffs have also asserted evidentiary objections along with their opposition. *See* Dkts. # 44–45. Defendant responded to these objections. *See* Dkt. # 52. To the extent that the Court relies on objected-to evidence, it relies only on admissible evidence and, therefore, the objections are overruled. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

IV. Discussion

    A. Direct Trademark Infringement Claims (Claims 1–4)

        i. "Use in Commerce"

To establish a claim of direct trademark infringement, a plaintiff must show that (1) it has a valid, protectible trademark, and that (2) defendant's use of the marks in commerce (3) is likely to cause confusion. *See Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979 (N.D. Cal. 2015) (citing *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

2007)); *see also* 15 U.S.C. § 1114(1).  The parties do not dispute that Plaintiffs have a valid trademark or that the Counterfeit Goods were likely to cause confusion.  Instead, the point of contention is whether Defendant's handling of the Counterfeit Goods falls within the meaning of "use in commerce" under the Lanham Act.  "Use in commerce" is a statutory requirement of the trademark infringement, false designation of origin, and trademark dilution claims, *see* 15 U.S.C. §§ 1114(1)(a), 1125(a)(1), 1125(c)(1), and, by extension, California's unfair competition law claim, *see Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The ultimate test for unfair competition is exactly the same as for trademark infringement[.]").

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade," and a mark is deemed to be used in commerce when it is "placed in any manner on [] goods" and "the goods are sold or transported in commerce."  15 U.S.C. § 1127.  Courts have held that the "use in commerce" requirement is satisfied by the importation and transport of counterfeit goods, even in cases where the defendant never actually possessed the goods.  *See, e.g.*, *Philip Morris USA v. Liu*, 489 F. Supp. 2d 1119, 1122 n.2 (C.D. Cal. 2007).  In contrast, this Court previously held in its motion to dismiss order that misconduct "limited to facilitating sales and placing shipping labels on the Counterfeit Goods" was not enough to impose liability on Defendant.  *March 14, 2018 Order*, Dkt. # 16 ("*Mar. 14 Order*"), at 4.  This conclusion was based on various other district court cases that found no liability in analogous circumstances.  *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-7098 AHM (SHx), 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013) (dismissing a direct trademark infringement claim where the defendant provided access to an online forum where content bearing a trademark may be obtained); *Free Kick Master LLC v. Apple Inc.*, No. 15-cv-3403-PJH, 2016 WL 777916, at *8–10 (N.D. Cal. Feb. 29, 2016) (dismissing claim where an infringing good had been "available in defendants' online stores"); *see also Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1345, 1352–53 (W.D. Wash. 2014) (dismissing claims where "the bare factual allegations" that Amazon "enables third-party vendors to sell and distribute a variety of products to the public while Amazon 'fulfills' the orders" offer "no factual basis to support the intent and knowledge element of trademark counterfeiting").

Defendant seizes on the Court's prior ruling and argues that its alleged misconduct was "limited to facilitating sales and placing shipping labels on the accused products."  *Mot.* 18:2–5.  Plaintiffs contend that there remain genuine disputes of material fact concerning whether Defendant imported and further distributed the Counterfeit Goods.  *Opp.* 11:20–13:27.

Quanli Liu, the General Manager of WIN.IT America, describes Defendant's services as follows.  Customers ship their merchandise from China to Defendant.  *See Deposition of Quanli*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

*Liu*, Dkt. # 37-7 ("*Liu Dep.*"), 50:24–52:7.  They may do this either by directly sending the goods to Defendant's warehouses or delegating the task of shipping to WIN.IT (Shanghai).  *Id.* 98:5–9.  When the shipments arrive, Defendant sorts the goods by Stock Keeping Unit (SKU) and quantity and finds an appropriate storage location for each SKU within its warehouses.  *See id.* 50:24–52:7, 132:23–135:1. Once Third Party Sellers sell their products through online platforms such as eBay, Defendant locates the products, generates a shipping label for either USPS or UPS, places the label on the packages, and mails them.  *See id.*

Plaintiffs claim that there is more to the story.  To fill in the alleged gaps in Defendant's operations, Plaintiffs submit a declaration from Rosemary Coates, who is proffered as an expert on Chinese sourcing and manufacturing.  *See Declaration of Rosemary Coates*, Dkt. # 37-2 ("*Coates Decl.*").  According to her curriculum vitae, Coates has more than thirty years of experience in global supply chain management, including sourcing and manufacturing in China, import/export, logistics, warehousing, and distribution.  *Id.* ¶ 2, Ex. 1 at 1.  She has made dozens of trips to China on behalf of her clients, *id.* ¶ 2, and has authored five supply chain books, including "42 Rules for Sourcing and Manufacturing in China," *id.* ¶ 5.  Further, Coates is a Licensed U.S. Customs Broker and is empowered by the U.S. Customs and Border Protection ("CBP") to assist importers and exporters in meeting federal regulations governing imports and exports.  *Id.* ¶ 7.  She states that her opinions are formed after reviewing the facts, testimony, and evidence provided in this case and based on her own experience, observations, and knowledge.  *Id.* ¶ 11.  Based on her background and representation, the Court finds that Coates is qualified to opine on how e-commerce fulfillment processes typically work in a cross-country setting (especially as it pertains to China) and that her declaration is admissible.  *See* Fed. R. Evid. 702.

Coates opines that, in order for Defendant to receive products at its warehouses in the United States, the goods must be formally imported and clear U.S. Customs.  *Id.* ¶ 15.  All shipments exported from China and imported into the United States would be delivered to Defendant along with several customary shipping and customs clearance documents that specify the terms of sale and identify the exporter and importer of record.  *Id.* ¶ 16.  Coates further claims that if products are shipped to Defendant's warehouses in the United States, "WIN.IT America" would be listed as the "importer of record" and the "ultimate consignee," even if a third-party carrier is responsible for physically transporting the goods.  *See id.* ¶¶ 18–19.  And as the importer of record and the ultimate consignee for the freight arriving at its warehouses, Coates states that Defendant is responsible for confirming the goods received, warehoused, picked, packed, and shipped do not violate another's intellectual property ("IP") rights.  *Id.* ¶ 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

Coates notes several ways to identify the importer of record or the consignee for a shipment. First, when CBP seizes goods passing through the customs clearance process based on trademark violations, a "seizure notification letter" is sent to the owner of the IP at issue, the importer of record, and the consignee for the shipment. *Id.* ¶ 23. She explains that Defendant's status as the importer of record and consignee for products exported from China is evident based upon a seizure notification letter Defendant received at its California warehouse. *See id.*; *Ex. 5 to Declaration of Marcus F. Chaney* ("*Chaney Decl.*"), Dkt. # 48-1. Second, Coates points to data retrieved from Panjiva Inc., a global trade data company that provides import and export details on commercial shipments worldwide. *Coates Decl.* ¶ 24; *Ex. 6 to Chaney Decl.*, Dkt. # 37-9. Panjiva's data listed Defendant as the ultimate consignee for various products sent from Defendant's parent company and other Chinese shippers. *Id.*

Defendant responds that there is no genuine dispute that Defendant is not the importer of the Counterfeit Goods. First, it refers to Mr. Liu's testimony that "[n]either [WIN.IT (Shanghai)] nor [WIN.IT America] export or import [sic] third-party products." *Declaration of Quanli Liu*, Dkt. # 28-8 ("*Liu Decl.*"), ¶ 7. Further, Defendant states in its verified interrogatory responses that it had not found documents through a reasonable search that Coates claims would indicate Defendant as the importer. *See Ex. K to Declaration of Jeremy T. Elman* ("*Elman Decl.*"), Dkt. # 49-9. Defendant also attacks Coates's declaration as "false conjecture," pointing out that the seizure notification letter and the Panjiva record she cites were both not specific to BMW products at issue, but other products. *Reply* 10:19–20, 11:17–24.

Even so, the Court does not find that Coates's declaration is wholly irrelevant. Although Coates refers to records that are not specific to BMW products, her explanation of the import/export process in fulfillment services, along with the evidence she cites, serves at least as circumstantial evidence that Defendant had acted as the importer of the Counterfeit Goods at issue. At the summary judgment stage, the Court does not weigh the credibility of the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec.*, 809 F.2d at 630–31. Applying this standard, the Court concludes that there remain genuine disputes of fact as to whether Defendant "imported" the Counterfeit Goods, such that its handling of the Counterfeit Goods constituted "use in commerce" within the meaning of the Lanham Act.[1] As such, the Court **DENIES** summary judgment as to the first four claims.

---

[1] Plaintiffs repeat their argument that Defendant's mailing of the Counterfeit Goods is "distribution" that is considered a "use in commerce" under the Lanham Act. *Opp.* 12:24–13:27. The Court declines to revisit this issue and reaffirms its holding that simply retrieving items and affixing a shipping label and mailing via USPS or UPS are not enough to be considered "use in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

      *ii.*    *Nominative Fair Use*

Nominative fair use is a defense to trademark infringement. It applies where the use of a trademark is "necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." *Lasoff v. Amazon.com Inc.*, No. C16-151 BJR, 2017 WL 372948, at *7 (W.D. Wash. Jan. 26, 2017) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010)).

In its prior order, the Court noted that "[a]t least one court has suggested that when a 'plaintiff alleges that defendants are using [a mark] in connection with a product that is not the plaintiff's product, but rather, a counterfeit product, the nominative fair use doctrine does not apply.'" *Mar. 14 Order* at 5 (quoting *Slep-Tone Entm't Corp. v. Shenanigans Lounge*, No. 6:12-cv-1236-TC, 2013 WL 1768444, at *3 (D. Or. Feb. 22, 2013)). However, recognizing that it would be unfair to find that this defense is unavailable to companies that used the trademark to refer to products that they *believed* to be genuine but turned out to be counterfeits, the Court found it relevant whether Defendant knew or had reason to know of the infringement to determine if the nominative fair use applies here. *See id.*

As the Court discusses below, it finds that there is a genuine dispute of fact as to whether Defendant knew or had reason to know of the infringement when it distributed the Counterfeit Goods. Therefore, the Court **DENIES** summary judgment on the first four claims on this basis as well.

      C.    <u>Contributory Trademark Infringement (Claim 5)</u>

"[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). A service provider can be similarly liable if it exercises "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).

Here, Defendant contends that it had no reason to know that the accused products were counterfeits. First, before WIN.IT (Shanghai) accepts a product from a Third-Party Seller to be

---

commerce." *See Mar. 4 Order* at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

fulfilled by Defendant, the Seller must review and agree to a set of terms and conditions, called the "Supply Chain Management Service Agreement," on WIN.IT (Shanghai)'s website. *SUF* ¶ 6. Because Third-Party Sellers represent to Defendant that they are not violating anyone's IP rights by agreeing to these terms and conditions, Defendants argue that they did not have reason to know that the Sellers were selling counterfeits. *Mot.* 11:5–7; *Ex. A to Elman Decl.*, Dkt. # 49-3 ("*Service Agreement*"), § 6.1 ("[The Seller] shall guarantee that the copyright, trademark right, patent right and other intellectual property rights are not in violation of the applicable provisions of the relevant countries. [The Seller] shall assume any and all legal consequence and economic loss due to failure to meet this obligation including the loss of [WIN.IT]."). Second, Defendant claims that, upon notification of infringement from Plaintiff, it stopped offering its fulfillment services for the accused products. *Mot.* 6:24–7:16. In support, Defendant points to evidence from its inventory management system that showed that it stopped fulfillments of counterfeit items, identified by SKUs, within a few weeks after Plaintiffs' notifications. *See id.*; *see Ex. 4 to Declaration of Peng Chu* ("*Chu Decl.*"), Dkt. # 28-7, at 3.

Plaintiffs point out that a discrepancy in the record creates a genuine issue of fact. *Opp.* 14:16–20. Although Defendant's business records show surplus inventory for at least three of the Counterfeit Goods identified by Plaintiffs, Mr. Liu, in his deposition, denied that Defendant had any remaining inventory of the counterfeits or recalled ever segregating any surplus inventory. *Id.*; *Ex. 4 to Chu Decl.* at 1; *Liu Dep.* 156:19–157:13. Plaintiffs ask: "If WIN.IT America stopped distributing counterfeit goods shortly after notice, then why are all of the goods gone[?]" *Opp.* 14:19–20.

Defendant insists that there is no genuine dispute of fact because its business records show that it *has* remaining inventory of the accused products and so Plaintiffs are incorrect that all of the products are "gone." *Reply* 3:24–26. Further, Defendant suggests that Plaintiff's reliance on "a snippet of Mr. Liu's deposition indicating that he was personally unaware if there was any remaining inventory . . . of the accused products" was not enough to rebut the business records. *Id.* 3:16–19. However, this misstates what Mr. Liu indicated in his deposition. He stated that there was no longer any inventory of the Counterfeit Goods *based on the inventory records he saw*. *Liu Dep.* 157:2–13.

Ultimately, the Court cannot definitively conclude that the business records are infallible and therefore are more credible than Mr. Liu's testimony. Nor does the Court find it appropriate to do so at the summary judgment stage, where courts may not make credibility determinations or weigh conflicting evidence. *See T.W. Elec.*, 809 F.2d at 630. Therefore, drawing all reasonable inferences in the light most favorable to Plaintiffs, the Court finds that there remains

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

a dispute of fact as to whether Defendant continued to fulfill orders of Counterfeit Goods after it was informed about the trademark infringements.

Plaintiffs also claim that Defendant failed to show any account "suspension" after being informed that the account was selling Counterfeit Goods. *Opp.* 14:22–15:3. Defendant counters that there is significant evidence that WIN.IT (Shanghai) suspended the accounts of at least nine of the sixteen unique eBay Seller IDs identified in the complaint from placing fulfillment orders for the accused products. *Reply* 4:1–13. In support, it offers signed letters from Third-Party Sellers agreeing to a fine and that WIN.IT would no longer fulfill orders for the counterfeit products, *Exs. 9–10 to Chaney Decl.*, Dkts. # 39-3–39-5, as well as letters from WIN.IT to Third-Party Sellers that state "the cooperation between you and us shall terminate," *Ex. H–I to Elman Decl.*, Dkts. # 51-3–51-4. Be that as it may, there still remain seven Third-Party Sellers for which Defendant has not taken steps to notify them of the counterfeit claims or prevent the distribution of their Counterfeit Goods.

Plaintiff's focus on whether Defendant suspended the *accounts* of those who sold Counterfeit Goods rather than whether it stopped fulfilling *orders* for the Counterfeit Goods makes sense. In its complaint, Plaintiffs identified two instances where despite informing Defendant of eBay sellers that sold Counterfeit Goods, they later confirmed that the same eBay sellers were continuing to sell such products. *FAC* ¶¶ 42–43. Defendant's inventory management record shows that these sellers used different eBay IDs and SKUs to sell the Counterfeit Goods. *Ex. 4 to Chu Decl.*, at 3. Even so, Defendant's own evidence also shows that it had the ability to link these eBay IDs and SKUs to the same customer. *See id.* Although Defendant claims that "WIN.IT did not know that at the time it provided fulfillment services to [the same eBay seller] because the SKUs were different in WIN.IT's business records," *Mot.* 12:13–15; *see also id.* 12:16–27, it does not support this statement with specific evidence other than referring back to the inventory records. Taking all reasonable inferences in the light most favorable to Plaintiffs, the fact that Defendant's records show that a customer found to have sold an infringing product was also selling similar counterfeits using a different SKU creates a genuine issue of fact as to whether Defendant knew or had reason to know that it was continuing to offer services to sellers engaging in trademark infringement.

As such, the Court **DENIES** summary judgment as to the contributory trademark infringement claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

### D. Vicarious Trademark Infringement (Claim 6)

A defendant is liable for vicarious trademark infringement when "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). Here, it is undisputed that the Third-Party Sellers enter into agreement with WIN.IT (Shanghai) and WIN.IT (Hong Kong) for the fulfillment services that Defendant provides. *See SUF* ¶ 6. Defendant moves for summary judgment on this claim based on the language in the "Supply Chain Management Service Agreement" that it argues expressly states an independent contractor relationship between the Sellers and Defendant. *Mot.* 14:11–15:5. Specifically, the contract states, "[WIN.IT] is an independent contractor providing warehousing and transportation services to [Seller], not the legal representative, agency, joint venture participant, partner, employee of or the one joint with [Seller] for any purpose." *Service Agreement* § 2.1. It further notes, "Neither Party has any right or authority to assume or create any obligation of any kind or to make representation or warranty on behalf of the other Party, whether express or implied, or to bind the other Party in any respect or manner whatsoever" *Id.* § 11.2.

Plaintiffs have not presented any contrary evidence to show an agency or partnership relationship. Instead, Plaintiffs' objections to Defendant's argument center around the admissibility of the agreement. For example, Plaintiffs note that Defendant failed to produce any executed copies nor a certified translation of the agreement. *Opp.* 19:7–11. Defendant claims that it has remedied these objects by producing signed versions of these agreements and the certified translation with its Reply brief. *See Service Agreement*; *Elman Decl.*, Dkt. # 49-2, ¶ 3. However, the Court declines to consider this new evidence without giving Plaintiffs an opportunity to object to them. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond."). Therefore, the Court sustains Plaintiffs' objections and finds that Defendant has failed to show that no genuine dispute of fact exists to defeat Plaintiffs' vicarious liability claim.

As such, the Court **DENIES** Defendant's motion for summary judgment as to the vicarious trademark infringement cause of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8826 PSG (MRWx) | Date | January 25, 2019 |
|---|---|---|---|
| Title | BMW of North America, LLC et al. v. WIN.IT America, Inc. et al. | | |

IV.     <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment in full.

**IT IS SO ORDERED.**